**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  07-21564-CIV-HUCK/SIMONTON**

**CARLOS PINILLA, on his own**
**behalf and others similarly situated,**

      **Plaintiffs,**

**v.**

**NORTHWINGS ACCESSORIES CORP.,**
**a Florida corporation, and**
**LUIS J. MORELL, individually,**

      **Defendants.**

_____/

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND SANCTIONS

      This cause comes before this Court on Plaintiff's Motion for Protective Order and Award of Sanctions (DE # 30).  Defendants have responded (DE # 34) and Plaintiff has replied (DE # 37).  All discovery motions in this case have been referred to the undersigned Magistrate Judge by the Honorable Paul C. Huck, United States District Judge (DE # 12).  A hearing was held on September 25, 2007, and this Order incorporates by reference the rulings made during the course of that hearing.  For the reasons stated in the hearing and set forth in more detail below, Plaintiff's motion is **GRANTED IN PART AND DENIED IN PART**.

I.    **Factual and Procedural History**

      Plainitff, Carlos Pinilla ("Plaintiff," or "Mr. Pinilla"), initiated this action by filing a verified complaint seeking damages and attorneys' fees from his former employer, Northwings Accessories Corp. ("Northwings").  Two months later, Plaintiff was granted

leave to amend his verified complaint to add Northwings' President and General Manager, Luis J. Morell, as a defendant in his individual capacity (DE # 27).[1]  Plaintiff has alleged – on his behalf and on behalf of other similarly situated individuals – that Defendants failed to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  Plaintiff also alleges that Defendants breached the parties' employment agreement and improperly discharged him on pretextual grounds.

Defendants filed their answer, affirmative defenses and counterclaim, in which they denied the allegations in the complaint and claimed that it was Plaintiff who breached the parties' employment agreement by creating and concealing a conflict of interest between his employer, Northwings, and Plaintiff's personal company, Fabri-Equipment Corp. ("FEC").  According to Defendants, Plaintiff was purposefully inefficient and failed to hire sufficient workers in order to create the false appearance that Northwings was so overloaded with business that it would be necessary to contract with FEC to handle the overflow.  Defendants allege that Plaintiff did not disclose his conflict of interest and enriched FEC to the detriment of Northwings in violation of the employment agreement (DE # 8).

Defendants served two subpoenas in connection with this case.  The first subpoena was served on Plaintiff's immigration attorney, Martin Rosenow, Esq., requesting the production of five categories of documents relating to Plaintiff's H1-B United States Temporary Worker Visa Application (DE # 30).  Although Plaintiff initially objected to these requests, Plaintiffs' counsel represented at the September 25, 2007 hearing that those documents had been produced, and conceded that its objections

---

[1]      "Defendants," as used herein, shall refer to Northwings and Luis J. Morell collectively.

2

were, therefore, moot.

      The second subpoena sought the production of fifteen categories of materials

from Mr. Pinilla's company, FEC, including (DE # 30):

1.      Any and all documents reflecting communications between any present or former officer, employee, agent, or consultant of Fabri-Equipment Corp. and any present or former officer, employee, agent, or consultant of Northwings Accessories Corp., including but not limited to correspondence, memoranda, notes, agreements, e-mails, letters, or other communications related to their actual or potential employment, performance of services, compensation, or any other topic or issue.

2.      Any and all documents evidencing or reflecting payments made by Northwings Accessories Corp., individually or collectively, to Fabri-Equipment Corp., or to any of its officers, employees, agents, consultants, or contractors, from 2004 through the present.

3.      Any and all invoices, purchase orders, price quotes, service lists, or other documents reflecting services performed and offered to be performed on behalf of or for Northwings Accessories Corp. from 2004 through the present.

4.      Any and all documents reflecting lists or names of customers or potential customers who sought or obtained the services of Fabri-Equipment Corp. at any time, or who were contacted by Fabri-Equipment Corp. at any time.

5.      Any and all documents evidencing or reflecting any pricing plans or schemes used by Fabri-Equipment Corp. for any and all services offered.

6.      Any and all documents reflecting a business plan, sales plan, business model, and/or contract model for or used by Fabri-Equipment Corp.

7.      Any and all documents depicting or describing the facilities or equipment utilized by Fabri-Equipment Corp.

8.      Any and all operating manuals, procedure books, method books, manuals, product information, inventory information, contract or bidding documents, credit information documents, or other documents reflecting policies, procedures, or business analysis which Fabri-Equipment Corp. or its officers, employees, agents, consultants, or contracts have in their care, custody, or control.

3

9.     Any and all documents reflecting communication between any present or former officer, employee, agent, or consultant of Fabri-Equipment Corp. and any present or former customers, clients, vendors, distributors, or consumers of Northwings Aceessories Corp., including but not limited to memoranda, notes, e-mails, quotes for work, invoices, bills, receipts, or other communications.

10.    All purchasing, sales, and inventory records from 2004 through the present.

11.    Any and all documents reflecting revenue earned or generated by Fabri-Equipment Corp. from 2004 through the present, including but not limited to all corporate income tax returns, annual reports, accounts receivable records, and earnings statements.

12.    Any and all documents reflecting earnings paid to all employees, agents, or consultants of Fabri-Equipment Corp. from 2004 through the present.

13.    Any and all documents reflecting any payments of any sort made by Fabri-Equipment Corp. to Carlos Pinilla, any of his family members, or any acting on his or their behalf.

14.    Any and all documents reflecting any work performed by Fabri-Equipment Corp. in connection with aircraft utilized by FedEx from 2006 to the present.

15.    A copy of any electronic document retention policy of Fabri-Equipment Corp., in effect at any time, addressing, but not limited to, the retention of e-mails.

Plaintiff argues that all but two of Defendants' requests for production are inappropriate and requests a protective order prohibiting their discovery, as well as monetary sanctions against Defendants for filing the improper requests.

II.    The Positions of the Parties

Plaintiff has complained that Defendant's request for discovery is over-broad and, when viewed in conjunction with an unreasonably short deadline for production, evinces an impermissible purpose to harass and vex Plaintiff without just cause (DE #30). Defendants have responded by attacking the procedural impropriety of the motion under

4

consideration and defended the meritorious nature of its requests for production.

Specifically, Defendants' procedural argument asserts that Mr. Pinilla cannot object to the subpoena served on FEC unless the purpose of the objection is to avoid "annoyance embarrassment, oppression, or undue burden or expense," which Mr. Pinilla has failed to do by merely objecting to the over-breadth of the request (DE # 34 at 3) (citing Fed. R. Civ. P. 26(c)). Even if the motion for a protective order was filed on behalf of FEC, Defendants argue, it still failed to comport with the procedural requirements of Federal Rule of Civil Procedure 45(c)(2)(B), which would have required Plaintiff to first serve his objections to the discovery request on Defendants; and also failed to comport with Southern District of Florida Local Rule 7.1.A.3, which would have required Plaintiff to make a more sincere effort to confer with Defendants before filing the instant motion (DE # 34 at 4).

Although Plaintiff has agreed to comply with Defendants' second and third requests for production on FEC,[2] Defendants argue that each of the fifteen categories of documents enumerated in FEC's request for production are "directly relevant" to the issues in this case (DE # 34 at 6). In particular, according to Defendants:

Request No. 1 is relevant to support Defendants' hunch that Plaintiff violated the employment agreement by soliciting Northwings' employees to work for FEC, *id.*;

Request Nos. 4 and 9-14 are relevant to gauge how much time Defendant spent on FEC's business rather than Northwings' business and the scope of Plaintiff's alleged breach of the non-compete provision in the employment contract as well as the provision requiring Plaintiff to devote his best efforts, time, attention, and energies to Northwings' business, *id.*;

---

[2]     Request No. 2 seeks the production of documents relating to payments from Northwings to FEC from 2004 to the present. Request No. 3 seeks the production of FEC invoices and other documents reflecting services performed for Northwings from 2004 to the present.

**and**

> **Request Nos. 5-9 are relevant to Plaintiff's alleged violations of the employment agreement by using Northwings' confidential information and trade secrets in his operation of FEC,** *id.* **at 7;**

Defendants assert generally that "all of the requests . . . seek material directly relevant to these issues," *id.* at 6.

Finally, Defendants insist that their September 7th deadline for responding to their discovery requests was not intended to achieve an improper purpose, but rather the result of an attempt to complete discovery in advance of the October 10 deadline for summary judgment motions while complying with Plaintiff's request not to conduct separate depositions of Mr. Pinilla in his individual capacity and in his capacity as a corporate representative of FEC. *Id.* at 7.

Plaintiff counters that any attempt to further confer with Defendants in an effort to resolve the dispute in good faith would have been futile, and thus Defendants' procedural objections are disingenuous. Specifically, Plaintiff contends that his communications with Defendants' counsel satisfies the relevant Rules, and that Defendants' insistence on "specific objections" was merely gamesmanship in light of Defendants' hard-line stance that they would not compromise by narrowing the requests, which they considered to be "wholly relevant" (DE # 37).

In disputing the propriety of the requests directed at FEC, Plaintiff relies primarily on his assertions that "the vast majority of [Defendants'] requests . . . are blatantly over broad and harassing on their face" and that Defendants either "make no cogent arguments" supporting their requests or "do not even attempt to justify the vast majority of th[ose] requests" (DE # 37 at 3-4). Plaintiff disputes the relevance of Defendants' claim that FEC was "poaching [Northwings'] customers," and argues that even if records

for a "specific period of time might be relevant," Defendants' open-ended request is not sufficiently tailored to those ends.

### III.   Standard of Review

It is well-settled that the definition of relevance sets a remarkably low bar for the discovery of any evidence "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  However, the bounds of discovery are not limitless, and this Court has broad authority to fashion protective orders in order to ensure that the discovery process is manipulated in furtherance of any improper purpose.  Fed. R. Civ. P. 26(c); *see In re Alexander Grant & Co. Litig.,* 820 F.2d 352, 357 (11th Cir. 1987) ("A district court has broad discretion when fashioning protective orders.").  Upon a showing of good cause, a court may, among other things: refuse to permit discovery; restrict the production of discovery; limit discovery to a particular method of discovery; narrow the scope of matters discoverable; or require discovery to be sealed or divulged only to particular individuals.  Fed. R. Civ. P. 26(c).

The burden of establishing that "good cause" exists for the imposition of a protective order lies with the moving party.  *See Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001).  The "good cause" standard requires the reviewing court to undertake a demanding fact-intensive analysis that "balance[s] the party's interest in obtaining" the requested material "against the other party's interest" in protecting the release of the material.  *Id.*  Thus, a party seeking a protective order must demonstrate "particular and specific" facts supporting its motion.  *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

IV.     **Legal Analysis**

A.      **Procedure**

Defendants' procedural opposition to Plaintiff's motion for a protective order will not preclude this Court from examining the merits of Plaintiff's motion.  This Court finds that Defendants' characterization of Plaintiff's argument in support of its motion is unjustifiably narrow.  Although Plaintiff focused on the over-breadth of the subpoena request directed at FEC, Plaintiff also claimed that the request constituted "a method of harassment" (DE # 30 at 6).[3]  While Plaintiff did not parrot the specific language used in Federal Rules of Civil Procedure, which permits protective orders to avoid "annoyance, embarrassment, oppression, or undue burden or expense," it is clear that Plaintiff seeks to invoke the protection of those provisions.  Fed. R. Civ. P. 26(c).  This Court will proceed to consider the merits of Defendants' discovery requests.[4]

B.      **Request No. 9**

Request No. 9, in which Defendants request Plaintiff to produce "any and all documents reflecting communication between" any representative of FEC "and any present or former customers, clients, vendors, distributors, or consumers of Northwings Accessories Corp." is over-broad.  While communications between FEC and its customers, clients and consumers are discoverable, documents revealing

---

[3]      Plaintiff also suggests, when speaking of Defendants subpoenas in general, that Defendants' counsel's certification accompanying the discovery requests runs afoul of Federal Rule of Civil Procedure 26(g) because the request was "unduly burdensome" (DE # 30 at 8).

[4]      Plaintiff objected to Defendants' discovery request based on Federal Rule of Civil Procedure 26.  Based on the foregoing, it is unnecessary to address Defendants' alternative argument that Plaintiff failed to comply with Federal Rule of Civil Procedure 45, which Plaintiff did not assert as a basis supporting its motion for a protective order.

communications between FEC and its vendors and distributors are not reasonably calculated to lead to evidence that is relevant to any claim, counterclaim or likely defense in this matter.  To the extent that the request may lead to discoverable evidence, that evidence can be likely gathered from more convenient sources or, alternatively, from FEC's responses to Northwings' other, broad-scope requests for production, which included requests for documents reflecting services performed, pricing plans, and descriptions of FEC's facilities, equipment and inventory.

### C.      Request No. 13

Request No. 13 is also over-broad.  To the extent that documents reflecting "payments of any sort made by [FEC] to any of [Plaintiff's] family members, or any acting on their behalf" is relevant to the case at bar, the intrusiveness of the request creates an undue burden that outweighs the benefit that such discovery could have on the fair adjudication of these claims, and Defendants agreed to this limitation at the hearing. *See* Fed. R. Civ. P. 26(b)(2)(B).

### D.      Temporal Scope

Although most of Defendants' requests for production relate to documents created since 2004, some requests reach back further than that.  Because the claims and counterclaims in this case center around the alleged breach of an employment agreement that was executed in July 2005 and a corporation, FEC, that was created in 2004, FEC is not required to produce any document predating its incorporation in 2004.[5]

---

[5]      The Court considered limiting the temporal scope to 2005 if Plaintiff agreed that he would not rely upon any activities of FEC prior to that time to support a defense to the counterclaim; however, counsel was not prepared to make that concession.

9

E.      **The Remaining Requests**

The remaining requests seek documents which are relevant to the claims and defenses at issue in this case; and, particularly are relevant to the counterclaim.  Plaintiff asserts that it has already produced most of these documents, and that no documents exists with respect to some of the requests.[6]   Plaintiff has failed to make specific objections to these requests; and there has been no response directed to each of the categories of documents requested.  Therefore, FEC must respond to the subpoena by stating that it has no responsive documents, by identifying the responsive documents which have already been produced, or by producing responsive documents if they have been withheld.

F.      **Sanctions**

Defendants' discovery requests are well within the bounds of propriety and, therefore, this Court declines Plaintiff's invitation to impose sanctions pursuant to Federal Rules of Civil Procedure 26 and 37 in order to "send a strong message that [Defendants'] hard ball litigation tactics . . . will not be tolerated" (DE # 30 at 7).

Based on the record as a whole, and considering the arguments raised by counsel at the hearing, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Protective Order and Award of Sanctions be **GRANTED IN PART AND DENIED IN PART** as follows:

1.      Plaintiff's motion for a protective order is GRANTED insofar as FEC shall not be required to produce documents reflecting communications between

---

[6]      Although the request is not directed to Plaintiff, but to his corporation, FEC, the parties do not dispute that Plaintiff has control over the relevant documents.

10

representatives and FEC and any present or former vendor or distributor of Northwings pursuant to Request No. 4.

2.      Plaintiff's motion for a protective order is GRANTED insofar as FEC shall not be required to produce documents reflecting payments by FEC to members of Plaintiff's family members or any individual acting on behalf of Plaintiff's family members pursuant to Request No. 13.

3.      Plaintiff's motion for a protective order is GRANTED insofar as FEC shall not be required to produce any document created prior to the date of its incorporation in 2004.

4.      Plaintiff's motion for protective order is DENIED in all other respects.

5.      On or before October 3, 2007, FEC shall comply with this Order.

6.      Plaintiff's motion for sanctions is DENIED.

**DONE AND ORDERED** in Chambers in Miami, Florida, on September 25, 2007.

_Andrea M. Simonton_
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies to:
The Honorable Paul C. Huck, United States District Judge
All counsel of record